IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ALICIA DAWN RALPH                                                                 PLAINTIFF

        v.                         Civil No. 11-2253

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                    DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

    Plaintiff, Alicia Ralph, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.    Procedural Background:**

    The Plaintiff filed her applications for SSI and DIB on March 6, 2008, alleging an onset date of October 25, 2007, due to degenerative disk disease ("DDD") with bone spurs, a herniated disk, irritable bowel syndrome ("IBS"), anxiety, depression, bipolar disorder, and post traumatic stress disorder ("PTSD"). Tr. 119-123, 124-127, 150, 178-179, 193, 204, 213. The Commissioner denied Plaintiff's application initially and on reconsideration. Tr. 68-84. An administrative hearing was held on August 11, 2009. Tr. 28-67. Plaintiff was present and represented by counsel.

    At the time of the hearing, Plaintiff was 31 years old and possessed a high school education. Tr. 34, 161. Plaintiff had past relevant work "(PRW") experience as a fast food worker and personal care aide Tr. 34-39, 151-152, 163-167, 170-177.

    On February 26, 2010, the ALJ found Plaintiff's DDD, depression, PTSD, and obesity to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 17-18. After partially discrediting Plaintiff's subjective complaints,

the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work except

> she is limited to sitting continuously for thirty minutes and standing continuously for thirty minutes and requires a sit/stand option. Also, the claimant is to engage in no sustained driving, no climbing of scaffolds, ladders, or ropes, and only occasional climbing or ramps and stairs, stooping, bending, crouching, crawling, kneeling, and balancing. She must avoid all exposure to unprotected heights, dangerous equipment/machines, and extreme vibration. The claimant is able to perform work that is routine, repetitive, and learned by rote with few variables, and that requires simple instructions and little judgment. Further, she is limited to jobs with only superficial contact incidental to work with the public and co-workers, and she requires supervision that is concrete, direct, and specific.

Tr. 18. With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a ticket checker, feather trimmer, golf ball trimmer, and almond blancher. Tr. 21-22.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on October 24, 2011. Tr. 1-4. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 6, 9.

**II.     Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible

to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion:**

Of particular concern to the undersigned is the ALJ's treatment of Dr. Mohmood Ahmad's treating source statement. A treating physician's medical opinion is given controlling weight if that

3

opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2).

The pertinent medical evidence reveals as follows. In February 2007, Plaintiff underwent a microlaminectomy on the right with decompression of the right L5 and S1 nerve roots due to lateral stenosis at the L5-S1. Tr. 282-300. The surgery, however, was not successful. Follow-up visits reveal reports of continued pain, and treatment to include a variety of modalities, including narcotic pain medication, trigger point injections, epidural steroid injections, physical therapy, and a TENS unit.

Beginning in January 2007, Plaintiff was treated by Dr. Scott Schlesinger with Arkansas Neurosurgery Brain & Spine Clinic. Tr. 242-257. He noted continued tenderness over the left sacroiliac joint. In March and April 2007, she underwent trigger point injections into the hip and epidural steroid injections, all without much real benefit. Tr. 245-246, 247-248. A TENS unit was also of no significant benefit. An MRI ordered in May 2007 showed a shallow central protrusion at the L4-5 with no well defined root compromise. Tr. 301-302. She was quite tender over the right trochantric bursa and right sacroiliac joint and exhibited decreased pinprick sensation in the right S1 distribution. Tr. 244. Plaintiff also had a positive straight leg raise on the right. Dr. Ronald Williams, an associate of Dr. Schlesinger's noted that Plaintiff had tried "all of the ordinary treatments without any benefit." Therefore, she was referred for a chronic pain management program. Tr. 244. In January 2008, due to continued bilateral lower extremity numbness, pain, and numbness in hips and feet, Dr. Schlesinger prescribed Lyrica and referred her to Dr. Lon Burba for a neurology consult. Tr. 241-242.

From September 4, 2007, until March 26, 2008, Plaintiff was treated by Dr. Mahmood Ahmad at United Pain Care. Tr. 233-241. Her diagnoses included lumbosacral spondylosis, sleep disturbance, adjustment disorder, and anxiety/depression. He recommended continued medical management and nerve blocks. Plaintiff was administered a medial branch block in August 2007. Tr. 239. In September 2007, she was switched from Oxycodone due to stomach problems and underwent her first lumbar/sacral

4

medial branch rhizotomy. Tr. 240. Opana (Oxymorphone) was added in December, and she was scheduled for another medial branch rhizotomy. Tr. 235-236. An MRI of her lumbar spine conducted in January 2008 showed multilevel degenerative changes and bilateral lateral recess stenosis at the L4-5 level with compression of the L5 nerve roots. Tr. 253-254. At this time, Dr. Ahmad administered a second medial branch rhizotomy. Then, in March 2008, he adjusted the dosage of Tylenol in her Hydrocodone and recommended repeat medial branch blocks. Tr. 237-238.

On February 19, 2008, Plaintiff consulted with neurologist Dr. Lon Burba. Tr. 260-261. She complained of her legs going completely numb, resulting in falls. Plaintiff also reported chronic and constant back pain and numbness that comes and goes when staying in one position for very long. Aan examination revealed mild stocking glove hyperthesia. Dr. Burba diagnosed Plaintiff with possible small fiber polyneuropathy, rule out multiple sclerosis, and DDD of the LS spine. He ordered an MRI of her brain and lab tests and prescribed Xanax, B12, and Folate. Dr. Burba also noted that Plaintiff was getting excellent relief from the Lyrica Dr. Schlesinger had prescribed. Tr. 261. The MRI of her brain showed mild low-lying cerebellar tonsils without dominant crowding of the craniocervical junction. Tr. 303. There was no dominant foci or abnormal signal seen in the cerebrum or cerebellum and no abnormal enhancement or restrained diffusion identified. Tr. 303.

On March 25, 2008, she reported lower back pain that radiated through her legs. Tr. 258-259. She felt it had worsened since her last visit, in spite of the Lyrica. Plaintiff had also noticed numbness in her arms and found herself stuttering at times. Dr. Burba diagnosed her with migraine headaches, leg numbness of uncertain etiology, and a speech disorder. He recommend a second opinion from the neurology clinic at the University of Arkansas Medical Center, refilled her Lyrica prescription, and gave her samples of Maxalt for her headaches. Tr. 259.

On July 17, 2008, Dr. Ahmad completed a physical RFC assessment. Tr. 390-396. He reported treating Plaintiff on a monthly basis for lumbar disc disease and radiculopathy. Dr. Ahmad noted

5

paravertebral tenderness and a positive straight leg raising on the right at 40 degrees. He indicated that her condition was unlikely to reverse itself. Some nausea with Fentanyl Patch was reported. Tr. 391. He also confirmed problems with depression, anxiety, and psychological factors affecting her physical condition. Dr. Ahmad concluded that her attention and concentration was "occasionally" (6% to 33% of an 8 hour workday) interfered with to the point she would be unable to perform even simple work tasks. He determined she would be incapable of even "low stress" jobs, would be limited to about 2 hours each sitting or standing/walking in an 8 hour workday, would require unscheduled breaks every 30 minutes, would need to elevate her legs to about 45 degrees 60 percent of the time, could frequently lift less than 10 pounds and occasionally lift 10 pounds, could never stoop (bend), crouch, or climb ladders, could rarely climb stairs, could occasionally twist, and would need to avoid heat. Dr. Ahmad also indicated that Plaintiff would be absent from work more than 4 days per month. Tr. 395.

Records from Johnson Regional Medical Center (JRMC) indicate Plaintiff was treated in the emergency room on June 12, 2009, for complaints of low back pain Tr. 419-423. Spasms were evident in her lumbosacral spine, however, x-rays did not reveal the source of her pain. Tr. 423. Plaintiff was administered Tramadol and released home. Tr. 423.

The ALJ dismissed Dr. Ahmad's assessment, stating that it his treatment records were not a part of the file and that his assessment was inconsistent with the evidence of the record as a whole. He failed, however, to identify the alleged inconsistencies he relied on to dismiss Dr. Ahmad's treating source statement. *See Holmstrom v. Massanari,* 270 F.3d 715, 720 (8th Cir. 2001) (ALJ must give good reasons for whatever weight he gives the treating physician's opinion). And, contrary to his assertion, at least some of Dr. Ahmad's treatment notes are contained in the record.

After reviewing the entire record, the undersigned is unable to discern any glaring inconsistencies among Plaintiff's treatment records and Dr. Ahmad's assessment. *See Finch v. Astrue*, 547 F. 3d 933, 937-938 (8th Cir. 2008) (holding ALJ may not substitute his opinion for that of a

physician). Therefore, we believe remand is necessary to allow the ALJ to reconsider Dr. Ahmad's assessment. If the ALJ still feels that inconsistencies remain, he is directed to recontact Dr. Ahmad. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995) (ALJ has responsibility to develop the record particularly where there are apparent inconsistencies in the treating physicians opinion). It would also be advisable for the ALJ to obtain an RFC assessment for Dr. Burba, who appears to have treated Plaintiff most recently.

IV.     Conclusion:

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 22nd day of October 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A (Rev. 8/82)